813 F.2d 403
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Codell Blease THOMAS and Elizabeth F. Thomas, Appellants,
v.
DELTA ENTERPRISES, INC., Appellee.
 No. 85-2397.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 8, 1986.
Decided Nov. 13, 1986.
 
 Before RUSSELL and WIDENER, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 Brenda Reddix-Smalls (Carolina Regional Legal Services on brief) for appellant, James T. McBratney, Jr. (Rogers and McBratney on brief) for appellee.
 PER CURIAM:
 
 
 1
 This is an action to recover for an alleged violation of the Truth-in Lending Act, 15 U.S.C. Sec. 1635 (1982) (subsequently amended by Act of 1980, Pub.L. No. 96-221, 94 Stat. 175, 176, effective October 1, 1982). to which plaintiffs have appended a pendent state fraud action.
 
 
 2
 Both actions of the plaintiffs arose out of a credit sale by the defendant to the plaintiffs of a mobile home. The purchase price of the mobile home was $30,000. The plaintiffs paid the defendant $500 cash at the time of the sale, gave a post-dated check for $10,500 (which check was later cashed and collected by the defendant), and executed a consumer credit contract dated July 24, 1981 to secure the balance of the purchase price of $19,000, supported by a security agreement or chattel mortgage on the purchased mobile home by way of security. The plaintiffs did not receive a copy of such security agreement until August 17, 1981. The defendant later assigned the chattel mortgage and the debt it secured to the General Electric Credit Corporation. The defendant transferred and assigned at the same time to General Electric, as additional security to the debt, a mortgage dated August 17, 1981 on certain real estate owned by the plaintiffs. This real estate mortgage, assigned to General Electric by the defendant, purported to be executed by the plaintiffs and as such it had been duly recorded in the RMC Office of the County in which the real estate was located.
 
 
 3
 The mobile home was not delivered to the plaintiffs until August 17, 1981 and it was not until about a week later that the sales agreement was furnished the plaintiffs. No notice of the filing of a real estate mortgage was given the plaintiffs. In the meantime, the plaintiffs had become dissatisfied with the transaction and notified the defendant of its desire to rescind the transaction.[1] The defendant refused the plaintiffs' demand. The plaintiffs thereafter began to meet the payments provided in the sales contract. After eight months of such payments, the plaintiffs defaulted and General Electric, as assignee, filed suit in the state court on the security agreement (chattel mortgage) and for the foreclosure of the assigned real estate mortgage. The action was referred by the state court to a Special Referee to take the testimony and to report his findings of fact and conclusions of law.
 
 
 4
 At the trial of the state action before the Special Referee, the principal dispute appears to have been the validity of the real estate mortgage, the foreclosure of which was sought in the action. After reviewing the evidence, the Special Referee found that "the signatures on the real estate mortgage appear to me to be less than genuine" and he, therefore, concluded that "the real estate mortgage [was] not enforceable." On exceptions to this finding and conclusion of the Special Referee, the circuit judge said:
 
 
 5
 The signatures on the conditional sales contract are admittedly genuine. A comparison of these signatures with the signatures on the [real estate] mortgage leads to the inescapable conclusion that the signatures on the real estate mortgage are not genuine. There are so many dissimilarities between the signatures that in no way could it be said that these signatures were executed by the same person or persons.
 
 
 6
 The circuit judge, therefore, affirmed the voidance of the real estate mortgage as recommended by the Special Referee as well as the Special Referee's recommendation of judgment in favor of the General Electric on the sales agreement.
 
 
 7
 The plaintiffs then filed their action in the district court to recover for a violation of the Truth-in-Lending Act, in failure to give notice of the right of rescission and for failure to grant rescission upon demand reasonably made, and for fraud in their pendent state action. After a trial of both the Truth-in-Lending and the pendent fraud counts before a jury, the district judge granted the defendant's motion for a directed verdict on both causes of action. In dismissing the Truth-in-Lending count, the district court held that, under the law as it existed before the amendment of section 1635, 15 U.S.C., in 1982, the right of rescission did not exist where the security interest involved a mobile home because it did not qualify as "a traditional residential structure", which was the only type of structure within Section 1635. He found also that the real estate mortgage did not create a right of rescission because of its invalidity as established in the earlier state action between the parties. On the second count charging as a pendent claim fraud, the district judge found that "the record clearly would support a finding by the jury that the mortgage in question, Plaintiffs' Exhibit 6, was not executed by the Plaintiffs."[2] He added:
 
 
 8
 Since the mortgage was witnessed by a salesman for the defendant, and since it would appear in the referee's report that the lady at the defendant's place of business who notarized the signature testified, and excerpts of her testimony are included within that master's report, it seems that the inference would be that the mortgage was procured by the defendant, and I think the inference could be drawn that any impropriety established in the execution of the mortgage could be laid at the defendant's feet.
 
 
 9
 The district judge found that the plaintiffs had proved all the essential elements of a fraud action except for proof of pecuniary loss. He, therefore, dismissed the action of fraud for lack of proof of pecuniary loss.
 
 
 10
 The plaintiffs have appealed the judgment entered herein by the district court. We affirm in part and reverse and remand in part.
 
 
 11
 We have no doubt of the correctness of the district judge's ruling dismissing the Truth-in-Lending action. A lien agreement over a mobile home was not within the requirements of section 1615, under which a right of rescission exists, at the time this transaction between the plaintiffs and the defendant took place. See, the legislative history of the 1982 amendment of the Section in 1980 U.S.Code Cong. & Ad.News at 264. But we do not agree that the plaintiffs' pendent state action for fraud was properly dismissed for failure to prove damages.
 
 
 12
 In dismissing the plaintiffs' pendent fraud action, the district court relied on the South Carolina case of Daniels v. Coleman, 253 S.C. 218, 169 S.E.2d 593 (1969). That case, in our opinion, does not authorize dismissal of the plaintiffs' fraud action. In Daniels, the parties had engaged in negotiations to settle a case to void an alleged fraudulent conveyance. They had agreed upon a settlement under which the plaintiff in the action was to execute a mortgage over certain real estate and the defendant in the action was to execute in return a release of certain claims. The mortgage and the note it secured were executed by the plaintiff as agreed and was given to a third party for delivery to the defendant when the latter had executed the releases. The defendant, it was alleged, induced the third party to deliver to him the note and deed of the plaintiff by falsely representing that he (the defendant) had executed and delivered to the plaintiff the releases. The defendant on the same day sought to record the mortgage but recording was refused because the mortgage had not been properly attested. The next day, the plaintiff demanded of the defendant the return of the note and mortgage and the defendant promptly tendered the return of the note and mortgage. At trial, the plaintiff prevailed on his action for damages and deceit. On appeal, the judgment in favor of the plaintiff was reversed. The Court found that the plaintiff had failed to show any damages and therefore was not entitled to recover. In so ruling, the Court said:
 
 
 13
 The evidence is conclusive that the note and mortgage, the possession of which was alleged to have been obtained by fraud and deceit, have not been hypothecated nor have the same passed into the hands of a bona fide purchaser nor has the appellant [the second party] sought to recover upon the said note. In addition thereto, the note and mortgage have been tendered to the respondents and they have refused such tender. It is our view that the respondents have sustained no actual pecuniary loss.
 
 
 14
 253 S.C. at 227.
 
 
 15
 The case under review is entirely different than Daniels. The defendant in Daniels had not forged a mortgage over the plaintiff's land as had apparently the defendant in this case. On the contrary, the plaintiff in Daniels had admittedly signed the mortgage; his only contention was that the stakeholder was induced by the deceit of the defendant to deliver prematurely the mortgage to him.[3] When the next day the plaintiff complained, the defendant promptly tendered a return of the mortgage, which, as the Court pointedly emphasized, had not been recorded, had not been assigned, and had not been the subject of a foreclosure proceedings. The defendant in this case, on the other hand, never tendered a return of the mortgage to the plaintiffs, but it recorded the mortgage as an encumbrance on plaintiffs' title to their land and proceeded then to assign for value the mortgage and the note it purported to secure to the General Electric which purchased presumably without notice of the forgery by the defendant. Later the General Electric sought to foreclose that forged mortgage in an action against the plaintiffs and the plaintiffs incurred considerable expense such as attorney's fees in defending their title against this foreclosure of their property under an invalid forged mortgage fabricated by the defendant in this action. Such a case is a far cry from Daniels; in fact, it is precisely the type of case which the Court in Daniels was careful to point out was not involved in that decision and on which it was not ruling.
 
 
 16
 It is inconceivable to us that one who forges a mortgage creating a cloud on another's valid title to land, a mortgage which he records and assigns to a third party who files a foreclosure action against the owner of the land thereby forcing the owner to answer and to incur expenses in order to preserve his title against a forged mortgage, has not suffered compensable damages. It may be that even in a tort as egregious as this one the plaintiffs may not recover as an element of damages in fraud an award for "great emotional shock, inconvenience, and embarrassment" suffered thus by reason of the could on their title, Carrigg v. Blue, 283 S.C. 494, 497, n. 1; 323 S.E.2d 787, 789, n. 1 (Court of Appeals 1984), but are limited to "pecuniary loss suffered by [them] which was the proximate result of the alleged wrongful conduct of the defendants," Gilbert v. Mid-South Machinery Co., 267 S.C. 211, 224, 227 S.E.2d 189, 194 (1976). Admittedly there is respectable authority to the contrary in a case as flagrant a fraud as this. Northrup v. Miles Homes, Inc., 204 N.W.2d 850 (Iowa, 1973). We, however, find it unnecessary to determine whether, under the facts of this case, emotional shock and embarrassment may be an element of damages. The expenses incurred by the plaintiffs in this case, including their attorney's fees, in defending the foreclosure action instituted by defendant's assignee on the forged mortgage were clearly recoverable damages in this fraud action.[4] Such conclusion is in line with the principle stated in Restatement (Second) of Torts Sec. 914:
 
 
 17
 One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.
 
 
 18
 See, also, 37 C.J.S. Sec. 141, pp. 468-69; Seaboard Surety Co. v. Permacrete Construction Corp., 130 F.Supp. 184, 187 (E.D.Pa.1954); Feldmesser v. Lemberger, 101 N.J.L. 184, 127 A. 815, 41 A.L.R. 1153 (1925). This case is the exact type of case hypothesized by the Restatement and is also the type of case which the South Carolina court in Daniels inferentially at least suggested might present sufficient evidence of pecuniary loss to support a cause of action for fraud. Whether the plaintiffs are entitled to punitive damages under the circumstances is a matter that can be considered on remand. See, Dunsil v. Jones Chevrolet Co., Inc., 268 S.C. 291, 295, 233 S.E.2d 101, 103 (1977); Weatherford v. Home Finance Co., 225 S.C. 313, 320, 82 S.E.2d 196, 199-200 (1954).
 
 
 19
 The judgment dismissing the plaintiffs' pendent claim is vacated and plaintiffs' cause of action in fraud is remanded to the district court for disposition in accordance with this opinion. The judgment of dismissal of plaintiffs' Truth-in-Lending cause is, however, affirmed.
 
 
 20
 REVERSED IN PART, AFFIRMED IN PART, REMANDED WITH DIRECTIONS.
 
 
 
 [1]
 The plaintiffs claim that this demand for rescission was within three (3) days after they had received a copy of the agreement
 
 
 [2]
 Even though the federal action has been dismissed, the district court has the discretion to retain jurisdiction and to decide the pendent state action. Webb v. Bladen, Sec. 480 F.2d 306, 308-9 (4th Cir.1973); Hector v. Wegleisi, 558 F.Supp. 194, 204-05 (D.Md.1982)
 
 
 [3]
 In a later case arising out of the same transactions, the Court described the action as follows:
 In Daniels v. Coleman, 253 S.C. 218, 169 S.E.2d 593 (1969), the same parties were before this Court concerning a $20,000 note, secured by a mortgage on the subject property of this action. The note was to be given to Coleman in return for clearing the debts of Linzie Rogers and for not bringing this action. The agreement was never finalized because of the inability of the parties to agree on comparatively minor details.
 Coleman v. Daniels, 261 S.C. 198, 201, n. 1, 199 S.E.2d 74, 75, n. 1.
 
 
 [4]
 By confining our discussion of the right of the plaintiffs to recover compensatory damages on their state fraud count to the expenses of defending the third party's action, we do not intend to foreclose the plaintiffs from seeking to recover other elements of actual damages if they can